# Exhibit A

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"); Foundations Health Solutions, Inc., Olympia Therapy, Inc., Tridia Hospice Care, Inc., Brian Colleran, and Daniel Parker (collectively, "the Defendants"); and relators Vladimir Trakhter, Paula Bourne, and La'Tasha Goodwin (individually, "Relator," collectively, "Relators"); (the "United States", "Defendants" and Relators are collectively referred to herein as "the Parties"), through their authorized representatives.

RECITALS

A.      Provider Services, Inc. ("PSI") was an Ohio corporation that managed skilled nursing facilities throughout Ohio, including the facilities listed in Appendix A ("Subject Facilities"), at times relevant to this Agreement. In 2010, PSI merged with BCFL Holdings, Inc., which continued to provide management services to the Subject Facilities. BCFL Holdings, Inc. was renamed Foundations Health Solutions, Inc. in 2013.

B.      Olympia Therapy, Inc. is an Ohio corporation that provided physical, occupational, and speech therapy rehabilitation services at the Subject Facilities at times relevant to this Agreement.

C.      Tridia Hospice Care, Inc. is an Ohio corporation that provides hospice services throughout Ohio.

D.      Brian Colleran, Daniel Parker, and/or entities affiliated therewith owned and/or operated PSI, BCFL Holdings, Inc., Foundations Health Solutions, Inc., Olympia Therapy, Inc., and Tridia Hospice Care, Inc. at times relevant to this Agreement.

E.  On March 7, 2011, Vladimir Trakhter filed an action in the United States District Court for the Southern District of Ohio captioned *United States ex rel. Trakhter v. Provider Services, Inc., n/k/a BCFL Holdings, Inc. et al.*, Case Number 1:11-cv-217, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Trakhter Action").  The Trakhter Action alleges that PSI and Olympia Therapy, Inc. knowingly submitted or caused the submission of false claims for medically unnecessary therapy services provided to Medicare Part A patients at skilled nursing facilities, including at the Subject Facilities.

F.  On December 6, 2012, Paula Bourne and La'Tasha Goodwin filed an action in the United States District Court for the Southern District of Ohio captioned *United States ex rel. Bourne and Goodwin v. Brian Colleran et al.*, Case Number 1:12-cv-935, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Bourne and Goodwin Action"). The Bourne and Goodwin Action alleges, *inter alia*, that Colleran and Parker solicited and received kickbacks in exchange for providing referrals of patients from skilled nursing facilities, and that Tridia Hospice, Inc. submitted or caused the submission of false claims for hospice services provided to Medicare Part A patients for whom Tridia Hospice, Inc. failed to conduct proper certifications and/or medical examinations necessary to certify those patients either for initial or continuing eligibility for hospice. Ms. Bourne and Ms. Goodwin also allege in the Bourne and Goodwin Action retaliation in violation of 31 U.S.C. § 3730(h). Those retaliation claims are not addressed, resolved, or released in or by virtue of this Settlement Agreement, nor do the Defendants waive, give up, or otherwise settle any defenses thereto.

The Trakhter Action and the Bourne and Goodwin Action are collectively referred to herein as the "Civil Actions."

2

G.     The United States contends that the Defendants submitted or caused the

submission of claims for payment to the Medicare Program, Title XVIII of the Social Security

Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare").

H.     1.     The United States contends that it has certain civil claims against

Foundations Health Solutions, Inc. and Olympia Therapy, Inc. for knowingly submitting or

causing the submission of false and fraudulent claims to Medicare, from January 1, 2008 through

December 31, 2012, for medically unnecessary rehabilitation therapy services provided to

Medicare Part A residents at the Subject Facilities, including providing Ultra High Resource

Utilization Group (RUG) levels of therapy to patients at the Subject Facilities who did not

require those levels of therapy. The conduct described in this paragraph is referred to below as

the "Therapy Covered Conduct."

2.     The United States contends that it has certain civil claims against Brian

Colleran and Daniel Parker for knowingly causing the submission of false and fraudulent claims

to Medicare, from January 1, 2008 through December 31, 2012, for home health services that

were provided by Amber Home Care, LLC ("Amber") to patients who were referred to Amber

by certain skilled nursing facilities owned by or affiliated with Colleran and Parker, because

Colleran and Parker solicited and received remuneration from Amber's management company,

Edwin Stuart, LLC, in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). The

conduct described in this paragraph is referred to below as the "Amber Covered Conduct".

3.     The United States contends that it has certain civil claims against Tridia

Hospice, Inc. for knowingly submitting or causing the submission of false and fraudulent claims

to Medicare, from April 1, 2011 through December 31, 2013, for hospice services provided to

Medicare Part A patients who were ineligible for the hospice benefit because Tridia Hospice,

Inc. failed to conduct proper certifications and/or medical examinations necessary to certify

3

those patients either for initial or continuing eligibility for hospice. This conduct is referred to below as the "Hospice Covered Conduct."

Collectively, the conduct described in Paragraphs H.1 – H.3 is referred to below as the "Covered Conduct."

I. This Agreement is neither an admission of liability by the Defendants nor a concession by the United States that its claims are not well founded.

J. Each Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to reasonable expenses, attorney's fees, and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.     a.     Foundations Health Solutions, Inc. and Olympia Therapy, Inc. collectively shall pay to the United States $15,527,844 ("Therapy Settlement Amount");

b.     Brian Colleran and Daniel Parker collectively shall pay to the United States $895,830 ("Amber Settlement Amount"); and

c.     Tridia Hospice Care, Inc. shall pay to the United States $3,104,170 ("Hospice Settlement Amount"),

plus, for each Amount 1.a. – 1.c. listed in this Paragraph (collectively referred to as the "Settlement Amount"), interest accruing at the rate of 1.875% per annum from February 5, 2016 to the date of payment. The Amber Settlement Amount shall be paid no later than seven (7) business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of Ohio ("USAO"). The first third of the Therapy Settlement Amount ($5,175,948.00

4

plus interest) and the first third of the Hospice Settlement Amount ($1,034,723.33 plus interest) shall be paid no later than seven (7) business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the USAO. The remaining two-thirds of the Therapy Settlement Amount ($10,351,896 plus interest) and the remaining two-thirds of the Hospice Settlement Amount ($2,069,446.67 plus interest) shall be paid no later than six months after the Effective Date of this Agreement.

2.    a.    Conditioned upon the United States receiving the Therapy Settlement Amount, the United States shall pay $2,872,651.14, plus interest accruing at the rate of 1.875% per annum from February 5, 2016 to the date of payment, to Relator Trakhter by electronic funds transfer. The United States shall promptly pay one-third of the relator's share ($957,550.38 plus interest) upon receipt of the first payment and shall promptly pay the remaining two-thirds ($1,915,100.76 plus interest) of the relator's share upon receipt of the second payment of the Therapy Settlement Amount;

b.    Conditioned upon the United States receiving the Amber Settlement Amount, the United States promptly shall pay $165,728.55, plus interest accruing at the rate of 1.875% per annum from February 5, 2016 to the date of payment, collectively to Relators Bourne and Goodwin by electronic funds transfer; and

c.    Conditioned upon the United States receiving the Hospice Settlement Amount, the United States shall pay $574,271.45, plus interest accruing at the rate of 1.875% per annum from February 5, 2016 to the date of payment, collectively to Relators Bourne and Goodwin by electronic funds transfer. The United States shall promptly pay one-third of the relators' share ($191,423.82 plus interest) upon receipt of the first payment and shall promptly pay the remaining two-thirds ($382,847.63 plus interest) of the relators' share upon receipt of the second payment of the Hospice Settlement Amount.

5

3.     a.     Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon the full payment of the Settlement Amount, the United States releases Foundations Health Solutions, Inc. and Olympia Therapy, Inc., together with their respective current and former: parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; affiliated entities, managed entities, or operated entities; holding companies; corporate trustees; corporate owners; and the corporate successors and assigns of any of them from any civil or administrative monetary claim the United States has for the Therapy Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, Subpart I, 0.45(d); or the common law theories of payment by mistake, unjust enrichment, and fraud.

b.     Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon the full payment of the Settlement Amount, the United States releases Brian Colleran and Daniel Parker from any civil or administrative monetary claim the United States has for the Amber Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, Subpart I, 0.45(d); or the common law theories of payment by mistake, unjust enrichment, and fraud.

c.     Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon the full payment of the Settlement Amount, the United States

6

releases Tridia Hospice Care, Inc., together with its current and former: parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; affiliated entities, managed entities, or operated entities; holding companies; corporate trustees; corporate owners; and the corporate successors and assigns of any of them from any civil or administrative monetary claim the United States has for the Hospice Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, Subpart I, 0.45(d); or the common law theories of payment by mistake, unjust enrichment, and fraud.

4.    a.    Conditioned upon the full payment of the Therapy Settlement Amount listed in Paragraph 1.a. above, Vladimir Trakhter, for himself and for his heirs, successors, attorneys, agents, and assigns, fully and finally releases and forever discharges each of the Defendants, together with their current and former: parent corporations, direct and indirect subsidiaries, brother and sister corporations, divisions, affiliated entities, managed entities, operated entities, holding companies, corporate trustees, corporate owners, corporate predecessors, corporate successors, and the current and former: officers, directors, partners, members, employees, heirs, attorneys, agents, representatives and assigns of any of them, from any and all claims or causes of action, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, or under any state or federal statute, including but not limited to any and all claims or causes of actions arising from or related to the conduct set forth in the Trakhter Action or the facts and/or circumstances regarding the Trakhter Action, provided, however, that Trakhter and his attorneys expressly do not release any claims related to or in

7

connection with their rights to seek reasonable expenses, attorneys' fees, and costs under 31 U.S.C. § 3730(d).

        b.     Conditioned upon the full payment of the Amber Settlement Amount and the Hospice Settlement Amount, Paula Bourne and La'Tasha Goodwin, for themselves and for their heirs, successors, attorneys, agents, and assigns, fully and finally release and forever discharge each of the Defendants, together with their current and former: parent corporations, direct and indirect subsidiaries, brother and sister corporations, divisions, affiliated entities, managed entities, operated entities, holding companies, corporate trustees, corporate owners, corporate predecessors, corporate successors, and the current and former: officers, directors, partners, members, employees, heirs, attorneys, agents, representatives and assigns of any of them, from any and all claims or causes of action, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, or under any state or federal statute, including but not limited to any and all claims or causes of actions arising from or related to the conduct set forth in the Bourne and Goodwin Action or the facts and/or circumstances regarding the Bourne and Goodwin Action, provided, however, that Bourne and Goodwin and their attorneys expressly do not release any claims related to or in connection with their rights to seek reasonable expenses, attorneys' fees, and costs under 31 U.S.C. § 3730(d) and (h), or any claims for relief under 31 U.S.C. § 3730(h).

        5.     In consideration of the obligations of Foundations Health Solutions, Inc. and Brian Colleran's obligations in this Agreement and the Corporate Integrity Agreement ("CIA") entered into between OIG-HHS, Foundations Health Solutions, Inc. and Brian Colleran, and conditioned upon the full payment of the Therapy Settlement Amount and the Amber Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health

8

care programs (as defined in 42 U.S.C. §1320a-7b(f)), against Foundations Health Solutions, Inc.
and Brian Colleran under 42 U.S.C. §1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C.
§1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities), for
the Covered Conduct, except as reserved in this Paragraph and in Paragraph 6 below (concerning
excluded claims), below.  The OIG-HHS expressly reserves all rights to comply with any
statutory obligations to exclude Defendants from Medicare, Medicaid, and other Federal health
care programs under 42 U.S.C. §1320-7(a) (mandatory exclusion) based upon the Covered
Conduct.  Nothing in this Paragraph precludes the OIG-HHS from taking action against entities
or persons, or for conduct and practices, for which claims have been reserved in Paragraph 6
below.

      6.    Notwithstanding the releases given in paragraphs 3 and 4 of this Agreement, or
any other term of this Agreement, the following claims of the United States are specifically
reserved and are not released:

        a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

        b.    Any criminal liability;

        c.    Except as explicitly stated in this Agreement, any administrative liability,
including mandatory or permissive exclusion from Federal health care
programs;

        d.    Any liability to the United States (or its agencies) for any conduct other
than the Covered Conduct;

        e.    Any liability based upon obligations created by this Agreement;

        f.    Any liability of individuals, except as otherwise provided for in this
Agreement;

9

        g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services; and

        h.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7.      Each Relator and the heirs, successors, attorneys, agents, and assigns thereof shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and that the settlement amounts for each individual claim are also fair, adequate, and reasonable under all the circumstances. Conditioned upon the respective receipt of payments as described in Paragraphs 2a – 2c, each Relator and the heirs, successors, attorneys, agents, and assigns thereof fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Actions or under 31 U.S.C. § 3730(d), and from any claims to a share of the proceeds of this Agreement and/or the Civil Actions.

8.      Each Defendant waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9. Each Defendant fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Defendant asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

10. Each Defendant, for itself and for its heirs, successors, attorneys, agents, and assigns, together with its current and former: parent corporations, direct and indirect subsidiaries, brother and sister corporations, divisions, affiliated entities, managed entities, operated entities, holding companies, corporate trustees, corporate owners, corporate predecessors, corporate successors, and the current and former: officers, directors, partners, members, employees, heirs, attorneys, agents, representatives and assigns of any of them, fully and finally releases each Relator, as well as the heirs, successors, attorneys, agents, and assigns thereof, from any and all claims or causes of action of every kind and however denominated, (including attorney's fees, costs, and expenses of every kind and however denominated), whether known or unknown, fixed or contingent, in law or in equity, in contract or tort, or under any state or federal statute, rule or regulation, including, but not limited to, any and all claims or causes of action that the Defendants have asserted, could have asserted or may assert in the future against each Relator and the respective heirs, successors, attorneys, agents and assigns thereof, arising from or related in any way to the Civil Actions and that Relator's investigation and prosecution thereof, provided, however, that Defendants expressly reserve and do not waive any defenses as to Relators' and Relators' counsel's claims for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and (h) and any defenses to Relators' claims for relief under 31 U.S.C. § 3730(h), which are reserved by Paragraph 4 above.

11

11.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and each Defendant agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

12.     Each Defendant agrees to the following:

a.      Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of each Defendant, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil and criminal investigation(s) of the matters covered by this Agreement;

(3)     any investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement; and

(5)     any payment made to the United States pursuant to this Agreement and any payments that may be made to any Relator, including costs and attorney's fees; and

12

(6)     if applicable, the negotiation of, and obligations taken pursuant to the

Corporate Integrity Agreement ("CIA") to: (i) retain an independent

review organization to perform annual reviews as described in Section III

of the CIA; and (ii) prepare and submit reports to the OIG-HHS,

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

(FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 12.a.(6)

that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that

are not allowable based on any other authority applicable to any applicable Defendant.

b.      Future Treatment of Unallowable Costs:  Unallowable Costs shall be

separately determined and accounted for by each Defendant, and no Defendant shall charge such

Unallowable Costs directly or indirectly to any contracts with the United States or any State

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost

statement, information statement, or payment request submitted by it any of its subsidiaries or

affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.      Treatment of Unallowable Costs Previously Submitted for Payment: Each

Defendant further agrees that within 90 days of the Effective Date of this Agreement it shall

identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors,

and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph)

included in payments previously sought from the United States, or any state Medicaid program,

including, but not limited to, payments sought in any cost reports, cost statements, information

reports, or payment requests already submitted by it or any of its subsidiaries or affiliates, and

shall request, and agree, that such cost reports, cost statements, information reports, or payment

requests, even if already settled, be adjusted to account for the effect of the inclusion of the

13

Unallowable Costs. Each Defendant agrees that the United States, at a minimum, shall be entitled to recoup from it any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by any Defendant or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on that Defendant's or any of its subsidiaries' or affiliates' cost reports, cost statements, or information reports.

      d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine any Defendant's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

13.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in the Agreement.

14.    Each Defendant agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

15.    a.    Upon the United States' receipt of the initial payment of the Therapy Settlement Amount as described in Paragraph 1, the United States and Relator Trakhter shall promptly sign and file a joint stipulation of dismissal without prejudice of the Trakhter Action

14

pursuant to Rule 41(a)(1) with the exception of any claims for reasonable expenses, attorneys'

fees, and costs under 31 U.S.C. § 3730(d). Upon Defendants' final payment of principal and

accrued interest, the United States shall promptly file a Notice of Compliance with Settlement

Agreement with the Court. Upon the filing of the Notice of Compliance: (i) as to the United

States, the Trakhter Action will be dismissed with prejudice as to the Therapy Covered Conduct

as released in this Agreement, and without prejudice as to any other claims; and (ii) as to Relator

Trakhter, the Trakhter Action will be dismissed with prejudice as to all claims, with the

exception of any claims for reasonable expenses, attorneys' fees, and costs under 31 U.S.C. §

3730(d).

           b.      Upon the United States' receipt of the Amber Settlement Amount and the

initial payment of the Hospice Settlement Amount as described in Paragraph 1, the United States

and Relators Bourne and Goodwin shall promptly sign and file a joint stipulation of dismissal

without prejudice of the claims in the Bourne and Goodwin Action pursuant to Rule 41(a)(1)

with the exception of any claims for reasonable expenses, attorneys' fees, and costs under 31

U.S.C. § 3730(d). Upon Defendants' final payment of principal and accrued interest, the United

States shall promptly file a Notice of Compliance with Settlement Agreement with the Court.

Upon the filing of the Notice of Compliance: (i) the claims against Brian Colleran and Daniel

Parker shall be dismissed as to the United States with prejudice as to the Amber Covered

Conduct, and without prejudice as to any other claims; (ii) the claims against Tridia Hospice

Care, Inc. shall be dismissed as to the United States with prejudice as to the Hospice Covered

Conduct, and without prejudice as to any other claims; (iii) all claims against the parties related

to Defendants that are named in the Bourne and Goodwin Action – Provider Services Holding,

Inc., NP Insight, LLC, Optibill, Inc., Triumphant Return Rehab, Inc., and Olympia Therapy, Inc.

(collectively, "Related Entities") – shall be dismissed as to the United States without prejudice;

and (iv) all claims against the Defendants and the Related Entities shall be dismissed as to

Relators Bourne and Goodwin with prejudice, with the exception of any claims for reasonable

expenses, attorneys' fees, and costs under 31 U.S.C. § 3730(d) and (h), and any claims for relief

from retaliatory actions under 31 U.S.C. § 3730(h).

     16.    Defendants, and each of them, warrant that they have reviewed their financial

situations and that they are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and

548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the

Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this

Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth

constitute a contemporaneous exchange for new value given to Defendants, within the meaning

of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and

obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant

that the mutual promises, covenants, and obligations set forth herein are intended to and do, in

fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or

defraud any entity to which Defendants were or became indebted to on or after the date of this

transfer, within the meaning of 11 U.S.C. § 548(a)(1).

     17.    If within 91 days of the Effective Date of this Agreement or of any payment made

under this Agreement, Defendants, or any of them, commence, or a third party commences, any

case, proceeding, or other action under any law relating to bankruptcy, insolvency,

reorganization, or relief of debtors (a) seeking to have any order for relief of Defendants' debts,

or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a

receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial

part of Defendants' assets, Defendants agree as follows:

        a.      Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Defendants.

        b.      If Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States or any Relator, or his or her counsel, at its or their sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by any of the releases provided above. Defendants agree that (i) any such claims, actions, or proceedings brought by the United States or any Relator, or his or her counsel are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Defendants shall not argue or otherwise contend that the claims, actions, or proceedings of the United States or any Relator, or his or her counsel are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States or any Relator, or his or her counsel within 180 calendar days of written notification to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on February 5, 2016; and (iii) the United States or any Relator, or his or her counsel may assert a claim against Defendants in the full amount of the damages

17

allowable under the False Claims Act, and the United States and Relators or any Relator, or his or her counsel may pursue their claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding. In addition, an election by the United States to bring any civil and/or administrative claim, action, or proceeding against Defendants under this Paragraph shall be without prejudice to the rights of the Relators under 31 U.S.C. § 3730(d).

        c.     Defendants acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

18.     Except as set forth in 31 U.S.C. § 3730(d) and (h), each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

19.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

20.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Ohio. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

21.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

22.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

23.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24.　　This Agreement is binding on each Defendant's successors, transferees, heirs, and assigns.

25.　　This Agreement is binding on each Relator's successors, transferees, heirs, and assigns.

26.　　All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

27.　　This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[SIGNATURE PAGES FOLLOW]

THE UNITED STATES OF AMERICA

DATED: 7-3-17        BY: _____
                         Jennifer L. Cihon
                         Senior Trial Counsel
                         Commercial Litigation Branch
                         Civil Division
                         United States Department of Justice

DATED: 6/30/17       BY: _____
                         Mark T. D'Alessandro
                         Civil Chief
                         Andrew M. Malek
                         Assistant United States Attorney
                         Southern District of Ohio

DATED: 7/3/17        BY: _____
                         Lisa M. Re
                         Assistant Inspector General for Legal Affairs
                         Office of Counsel to the Inspector General
                         Office of Inspector General
                         United States Department of Health and Human Services

20

**FOUNDATIONS HEALTH SOLUTIONS, INC., OLYMPIA THERAPY, INC.,
AND TRIDIA HOSPICE CARE, INC.**

DATED: 6/15/17  BY: _____
Foundations Health Solutions, Inc., and Olympia Therapy.
Inc.,

DATED: 6/15/17  BY: _____
Tridia Hospice Care, Inc.

DATED: 6/15/17  BY: _____
Richard H. Blake
McDonald Hopkins LLC
Counsel for Foundations Health Solutions, Inc., Olympia
Therapy, Inc., and Tridia Hospice Care, Inc.

DATED: 6/15/17  BY: _____
Aric D. Martin
Rolf Goffman Martin Lang LLP
Counsel for Foundations Health Solutions, Inc., Olympia
Therapy, Inc., and Tridia Hospice Care, Inc.

**BRIAN COLLERAN**

DATED: 6/15/17  BY: _____
Brian Colleran

DATED: _____  BY: _____
B. Scott McBride
Baker & Hostetler LLP
Counsel for Brian Colleran

21

## FOUNDATIONS HEALTH SOLUTIONS, INC., OLYMPIA THERAPY, INC., AND TRIDIA HOSPICE CARE, INC.

DATED: _____    BY: _____
                        Foundations Health Solutions, Inc., and Olympia Therapy,
                        Inc.,


DATED: _____    BY: _____
                         Tridia Hospice Care, Inc.


DATED: _____    BY: _____
                        Richard H. Blake
                        McDonald Hopkins LLC
                        Counsel for Foundations Health Solutions, Inc., Olympia
                        Therapy, Inc., and Tridia Hospice Care, Inc.


DATED: _____    BY: _____
                        Aric D. Martin
                        Rolf Goffman Martin Lang LLP
                        Counsel for Foundations Health Solutions, Inc., Olympia
                        Therapy, Inc., and Tridia Hospice Care, Inc.

### BRIAN COLLERAN


DATED: _____    BY: _____
                        Brian Colleran


DATED: June 19, 2017   BY: _____
                        B. Scott McBride
                        Baker & Hostetler LLP
                        Counsel for Brian Colleran


21

<u>**DANIEL PARKER**</u>

DATED: 6/15/17        BY: _____

Daniel Parker

DATED: 6/15/12        BY: _____

Richard H. Blake
McDonald Hopkins LLC
Counsel for Daniel Parker

DATED: 6/15/17        BY: _____

Aric D. Martin
Rolf Goffman Martin Lang LLP
Counsel for Daniel Parker

**VLADIMIR TRAKHTER - RELATOR**

DATED: 06/28/17       BY: _Vladimir Trakhter_
                            Vladimir Trakhter

DATED: 06/28/17       BY: _____
                            John Hoffman
                            Korein Tillery, LLC
                            Counsel for Vladimir Trakhter

DATED: 06/28/17       BY: _____
                            James Hochman
                            Hochman Plunkett Co., L.P.A.
                            Counsel for Vladimir Trakhter

23

**PAULA BOURNE - RELATOR**

DATED: 6/15/17     BY: *Paula Bourne*
_____
Paula Bourne

DATED: 19 JUNE '17     BY: _____
Frederick M. Morgan, Jr.
Morgan Verkamp LLC
Counsel for Paula Bourne

**LA'TASHA GOODWIN - RELATOR**

DATED: _____     BY: _____
La'Tasha Goodwin

DATED: _____     BY: _____
Frederick M. Morgan, Jr.
Morgan Verkamp LLC
Counsel for La'Tasha Goodwin

## PAULA BOURNE - RELATOR

DATED: _____ BY: _____
Paula Bourne

DATED: _____ BY: _____
Frederick M. Morgan, Jr.
Morgan Verkamp LLC
Counsel for Paula Bourne

## LA'TASHA GOODWIN - RELATOR

DATED: 6/16/2017 BY: _____
La'Tasha Goodwin

DATED: 19 JVNE '17 BY: _____
Frederick M. Morgan, Jr.
Morgan Verkamp LLC
Counsel for La'Tasha Goodwin

24

## ATTACHMENT A

The following entities are defined as the "**Subject Facilities**":

| Facility | Dates Covered |
|---|---|
| Huron Health Care Center, Inc. d/b/a Admiral's Pointe Care Center | January 1, 2008 – December 31, 2012 |
| Brook Pointe Health and Rehab, Inc. d/b/a Beachwood Pointe Care Center | January 1, 2008 – December 31, 2012 |
| Uhrichsville Health Care Center, Inc. d/b/a Beacon Pointe Rehabilitation Center | January 1, 2008 – December 31, 2012 |
| Olive Health Care, Inc., d/b/a Canal Pointe Nursing & Rehabilitation Center | January 1, 2008 – December 31, 2012 |
| Wheelersburg Health Care Center, Inc., d/b/a Concord Health & Rehabilitation Center | January 1, 2008 – December 31, 2012 |
| Morning View of Delaware, Inc., d/b/a Country View of Sunbury | January 1, 2008 – December 31, 2012 |
| Bethesda Health and Rehab Center, Inc. d/b/a Emerald Pointe Health & Rehabilitation Center | January 1, 2008 – December 31, 2012 |
| Firelands Health Care, Inc., d/b/a Great Lakes Transitional Care Center | January 1, 2008 – December 31, 2012 |
| Highbanks Care Center, LLC | January 1, 2008 – December 31, 2012 |
| Jefferson Healthcare Center, LLC | January 1, 2008 – December 31, 2012 |
| LaGrange Nursing & Rehabilitation Center, Inc., d/b/a Keystone Pointe Health & Rehabilitation Center | January 1, 2008 – December 31, 2012 |
| West Lafayette Health Care, Inc., d/b/a Lafayette Pointe Nursing & Rehabilitation Center | January 1, 2008 – December 31, 2012 |
| Dayton Health Care, Inc., d/b/a The Maria-Joseph Living Care Center | January 1, 2008 – December 31, 2012 |
| Baltic Health Care Corp. d/b/a Oak Pointe Nursing & Rehabilitation Center | January 1, 2008 – December 31, 2012 |
| Olmsted Health Care, Inc., d/b/a Riverview Pointe Care Center | January 1, 2008 – December 31, 2012 |
| Roselawn Health Services Corp. d/b/a Roselawn Terrace | January 1, 2008 – December 31, 2012 |
| Castle Nursing Homes, Inc., d/b/a Scenic Pointe Nursing & Rehabilitation Center | January 1, 2008 – December 31, 2012 |
| Wintersville Health Care Center, Inc., d/b/a Sienna Woods Nursing & Rehabilitation Center | January 1, 2008 – December 31, 2012 |