# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex. rel.* TRAKHTER, | : : : | Case No. 1:11-cv-217 |
| | : | Judge Timothy S. Black |
| Plaintiff-Relator, | : : | |
| vs. | : : | |
| PROVIDER SERVICES, INC., *et al.*, | : : : | |
| Defendants. | : : | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF-RELATOR'S AMENDED MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES UNDER 31 U.S.C. § 3730(D) (Doc. 44)

This civil action is before the Court on Plaintiff-Relator Vladimir Trakhter's ("Trakhter") Amended Motion for Attorneys' Fees, Costs, and Expenses under 31 U.S.C. § 3730(d) (Doc. 44), as well as the parties' responsive memoranda (Docs. 45, 49, 55).

## I. BACKGROUND

Trakhter commenced this civil action pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). Trakhter's Complaint alleged that Defendants Provider Services, Inc. and Olympia Therapy, Inc. (collectively, "Defendants") knowingly submitted or caused the submission of false claims for medically unnecessary therapy services provided to Medicare Part A patients at skilled nursing facilities. (Doc. 2). The United States subsequently elected to intervene. (Doc. 35).

In July 2017, the United States, Trakhter, and Defendants (as well as plaintiff-relators and defendants in Case No. 1:12-CV-935) reached a $19.5 million global

settlement to resolve the False Claims Act claims brought by Trakhter (as well as plaintiff-relators in Case No. 1:12-CV-935[1]). (Doc. 45-1). Of that amount, $15,527,844.00 was attributable to Trakhter's claims. (*Id*. at 5). As a part of the global settlement, the United States agreed to award $2,872,651.14 to Trakhter. (*Id*. at 6).

Two law firms represented Trakhter in the aforementioned proceedings: Hochman Plunkett Co., LPA ("HP"), an Ohio firm; and Korein Tillery, LLC ("KT"), a Missouri firm (collectively, "Trakhter's Counsel").[2] In pursuit of Trakhter's claims: HP worked 1,045.17 hours, and incurred $541,078.50 in attorneys' fees and $4,488.90 in costs/expenses, (Doc. 54-1 at 12, 43); and KT worked 2,016.34 hours, and incurred $853,942.85 in attorneys' fees and $20,891.60 in costs/expenses, (Doc. 54-2 at 6, 130).

Specifically, Trakhter's Counsel generated the following hours, rates, and totals:

**HP's Proposed Hours, Rates, and Totals**

| Employee | Title | JD | Hours | Rate | Total |
|---|---|---|---|---|---|
| James Hochman | Partner | 1966 | 389.80 | $675 | $263,115.00 |
| Brett Bissonette | Associate CPA Statistician | 2010 | 542.35 | $450 | $244,057.50 |
| Natalie Tackett | Associate | 1988 | 113.02 | $300 | $33,906.00 |
| **Total** | | | **1,045.17** | | **$541,078.50** |

---

[1] "Case No. 1:12-CV-935" refers to another False Claims Act lawsuit filed in December 2012 by former employees of Tridia Hospice Care, Inc. against several defendants alleging excessive therapy and submission of false Medicare claims for hospice services.

[2] Trakhter's Counsel maintained a contingency fee agreement with Trakhter. (Doc. 49-1 at 18–19). Under the contingency fee agreement, Trakhter agreed to provide Trakhter's Counsel with 40% of the award he received from the United States. (*Id*.) As Trakhter received an award of approximately $2.9 million from the United States, Trakhter is required to provide Trakhter's Counsel with approximately $1.16 million under the contingency fee agreement. (*Id.*)

**KT's Proposed Hours, Rates, and Totals**

| Employee | Title | JD | Hours | Rate | Total |
|---|---|---|---|---|---|
| Steve Tillery | Partner | 1976 | 53.91 | $860 | $46,362.60 |
| Doug Sprong | Partner | 1989 | 18.01 | $675 | $12,156.75 |
| John Hoffman | Partner | 1990 | 491.63 | $650 | $319,559.50 |
| Aidan McNamara | Associate | 2002 | 337.17 | $400 | $134,868.00 |
| Michael Forrest | Associate | 2007 | 63.10 | $400 | $25,240.00 |
| Chris Combs | Associate | 2012 | 187.52 | $300 | $56,256.00 |
| Michelle Stallings | Associate | 2005 | 804.50 | $300 | $241,350.00 |
| Cozetta Gagg | Associate | 2000 | 60.50 | $300 | $18,180.00 |
| **Total** | | | **2,016.34** | | **$853,942.85** |

(Doc. 54-1 at 12; Doc. 54-2 at 6).[3]

On September 7, 2017, Trakhter filed this motion. (Doc. 44). In it, Trakhter asks the Court to award his counsel $1,395,021.35[4] in attorneys' fees, $25,380.50 in costs/expenses, and a 50% fee enhancement. (*See* Doc. 45 at 20 (reducing the attorneys' fees, costs/expenses, and fee enhancements to sum totals)). Trakhter also asks the Court to award his counsel the fees incurred in bringing this motion: $101,485.25 in attorneys' fees and $15,000.00 in additional costs/expenses. (Doc. 55 at 20).

---

[3] The parties' submissions list the hours and totals applicable to KT's attorneys inconsistently. *Compare* Doc. 45 at 8 (listing KT's hours as 2,016.74, and KT's total as $854,062.85), *with* Doc. 49 at 4 (listing KT's hours as 2,016.34, and KT's total as $18,180.00), *and* Doc. 54-2 (listing KT's hours as 2016.34, and KT's total as 853,942.85). For consistency, the Court uses the hours and totals listed in the table attached to Mr. Tillery's declaration. (Doc. 54-2 at 6). However, it is worth noting that even this table contains an inconsistency. Ms. Gagg's total ($18,180.00) appears to be incorrect. The product of her hours (60.5) and rate ($300) is actually $18,150.00.

[4] This number differs slightly from the number set out in Trakhter's motion ($1,395,141.30) due to the aforementioned inconsistencies. (Doc. 45 at 20).

## II. STANDARD OF REVIEW

Under the False Claims Act, a successful *qui tam* plaintiff "shall . . . receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1); *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 614 (6th Cir. 2007) ("The False Claims Act, 31 U.S.C. § 3730(d), provides for fee-shifting and includes both attorneys' fees and expenses as part of the award to a successful *qui tam* plaintiff.").

"The starting point for the Court's determination of a reasonable fee award is the fee applicant's 'lodestar' amount." *U.S. ex rel. MacKay v. Touchstone Research Labs., Ltd.*, No. 1:04-CV-327, 2009 WL 3150385, at *3 (S.D. Ohio Sept. 30, 2009). The "lodestar" amount is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* Where the fee applicant has established that the number of hours and the rate claimed are reasonable, the "lodestar" amount is presumed to be the reasonable fee to which counsel is entitled. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008).

A "district court's award or denial of attorney[s'] fees is reviewed for abuse of discretion." *Cramblit v. Fikse*, 33 F.3d 633, 634 (6th Cir. 1994); *see also Somberg on behalf of Somberg v. Utica Cmty. Sch.*, 908 F.3d 162, 182 (6th Cir. 2018) ("When a district court provides 'a clear and concise explanation of its reasons for the [attorneys' fees] award,' we afford the district court's calculation of the lodestar value and any justifiable departure substantial deference.") (quoting *Gonter*, 510 F.3d at 616).

4

# III. ANALYSIS

Defendants argue that the rates proposed by Trakhter's Counsel are unreasonable; that the records kept by Trakhter's Counsel are inadequate; and that a fee enhancement is not available under the facts of this case. (*See* Doc. 49). The Court considers each argument in turn, before setting out its final calculations.

## A. Reasonableness of Rates

Defendants argue that the rates proposed by Trakhter's Counsel are unreasonable. (Doc. 49 at 6). The Court agrees.

A court has the "broad discretion to determine what constitutes a reasonable hourly rate." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). A reasonable hourly rate is one that attracts competent counsel but avoids producing a windfall. *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). In determining what constitutes a reasonable hourly rate, a "useful guideline is the prevailing market rate in the relevant community." *Gilden v. Platinum Holdings Grp., LLC*, No. 1:18-CV-343, 2019 WL 590745, at *3 (S.D. Ohio Feb. 13, 2019) (quoting *Dowling*, 320 F. App'x at 447).

In this case, Trakhter's Counsel charged rates higher than the those prevailing in the relevant community. Thus, adjustment is proper.

### 1. The Relevant Community

First, the relevant community, by which to determine the prevailing rates, is the Ohio complex litigation community.

As a general rule, the "relevant community" is the jurisdiction where the case was tried. *See Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983). Courts depart from this general rule where a "good-faith effort" fails to identify local counsel, competent to handle the proceedings. *Sigley v. Kuhn*, Nos. 98-3977, 99-3531, 2000 WL 145187, at *7 (6th Cir. Jan. 31, 2000). This exception is called the out-of-town specialist rule. *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (analyzing the propriety of awarding out-of-town counsel out-of-town rates, under the out-of-town specialist rule).

The out-of-town specialist rule applies where a plaintiff shows that it was "necessary" to retain out-of-town counsel. *Hadix*, 65 F.3d at 535. The out-of-town specialist rule does not apply where competent local counsel is readily available. *Am. Broad. Companies, Inc. v. Brunner*, No. 1:04-CV-750, 2008 WL 11450441, at *11 (S.D. Ohio Sept. 30, 2008); *see, e.g.*, *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716–19 (6th Cir. 2016) (refusing to award out-of-town counsel national rates, where its retention was not necessary). A court has the broad discretion to hold out-of-town counsel to local rates. *Wayne*, 36 F.3d at 533.

Here, the relevant community is the Ohio complex litigation community—not the "national" complex litigation community (as Trakhter argues). (*See* Doc. 55 at 4–6). This is true despite the fact that Takhter retained an out-of-state firm (KT) to represent him. While KT is a highly accomplished firm, it is not an out-of-town specialist. Trakhter has not demonstrated that it was necessary for him to look beyond Ohio for

competent *qui tam* representation.[5] (Doc. 49-1 at 25). Indeed, Trakhter only checked with one other Ohio firm before retaining KT. (Doc. 55-2 at ¶¶ 4–9). Under such circumstances, no good-faith effort failed to identify local counsel.

### 2. *The Prevailing Rates*

Second, the prevailing rates, in the relevant community, are up to $345/hour for senior associates, and up to $580/hour for senior partners.

Over the past five- to ten-years, courts in the Southern District of Ohio have awarded attorneys' fees, at rates of $250–538/hour, in complex litigation cases. *See, e.g.*, *Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 847 (S.D. Ohio 2014) (awarding $285–538/hour in an ERISA case); *Hunter v. Hamilton Cty. Bd. of Elections*, No. 1:10-CV-820, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013) (citing $250–500/hour awards in complex litigation cases); *U.S. ex rel. Ellison v. Visiting Physicians Ass'n, P.C.*, No. 1:04-CV-220, 2010 WL 2854137, at *3 (S.D. Ohio July 19, 2010) (awarding $450–500/hour in a *qui tam* case).

Defendants have submitted data indicating that these rates fall above the normal Ohio rates. (*See* Doc. 49-1 at 21 (listing median rate for national litigation partners in Ohio as $440/hour). However, as Defendants admit, higher-than-normal rates are likely warranted in this case, based on the nature of the legal work involved. (*See id.* at 28). Indeed, the 2014 NLJ Billing Survey indicates that some large Ohio-based firms charge

---

[5] The Court agrees with Defendants' expert that the Ohio legal community contains competent attorneys, capable of representing Trakhter. (*See* Doc. 49-1 at 25 (stating that "Cincinnati has a plethora of extremely qualified Relators' counsel")).

over $400/hour for senior associates and over $600/hour for senior partners. (*See* Doc. 54-1 at 27 (Benesch, Friedlander, Coplan & Aronoff LLP (up to $475/hour for senior associates), Baker & Hostetler LLP (up to $670/hour for senior partners))).

Per these considerations, the Court concludes that the prevailing rates, in the relevant community, are up to $345/hour for senior associates, and up to $580/hour for senior partners.[6] While Trakhter argues that the Court should abandon these "Ohio" rates, for "national" ones, his argument is unpersuasive. (Doc. 55 at 4–6). None of the cases cited by Trakhter—each involving bankruptcy, securities, and related matters located in the Southern District of New York—bear any resemblance to this one. (Doc. 45-6 at 10–16). Trakhter's Counsel are not entitled to the best rates in the country; they are entitled to reasonable ones.[7] *See Husted*, 831 F.3d at 716 (rejecting premium rates).

### 3. *The Proposed Rates*

Finally, the rates charged by Trakhter's Counsel are unreasonable, based on the prevailing rates in the relevant community.

---

[6] This range largely adopts that proposed by Defendants' expert—$240–340/hour for associates, and $375–575/hour for partners—with a small upward adjustment for the higher rates evidenced by the 2014 NLJ Billing Survey. (Doc. 49-1 at 28; Doc. 54-1 at 27).

[7] Moreover, Trakhter's argument that KT is entitled to a higher rate because its actual hourly rates exceed those typical in Ohio fails. (Doc. 55 at 4). While KT's actual hourly rates may evidence those prevailing in Missouri, KT's home state, they do not evidence those prevailing in Ohio, the relevant community. *See, e.g.*, *Husted*, 831 F.3d at 719 (refusing to award out-of-state counsel their customary billing rates, as such rates were clearly "out of step with the local market"); *see also Lamar Advert. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 502 (6th Cir. 2006) ("The district court did not choose to award Mr. Walsh his actual billing rate. That decision was in the district court's sound discretion and is supported by the record.").

Trakhter requests $300–450/hour for associates. This rate is unreasonable. Seven associates worked on this case: four charged $300/hour, two charged $400/hour, and one charged $450/hour. Based on the rates adopted *supra*, as well as the associates' qualifications/experience, the Court lowers the rates of Mr. Combs to $260/hour; Ms. Tackett, Ms. Stallings, and Ms. Gagg to $275/hour; and Mr. Forrest, Mr. McNamara, and Mr. Bissonette to $325/hour.[8] *See, e.g.*, *Jorling v. Habilitation Servs., Inc.*, No. 1:03-CV-73, 2005 WL 1657060, at *11 (S.D. Ohio July 14, 2005) ($250/hour to associate in ADEA case); *Schumacher*, 995 F. Supp. 2d at 847 ($300–325/hour to senior associates in ERISA case).

Trakhter requests $650–860/hour for partners. This rate is also unreasonable. Four partners worked on this case: one charged $650/hour, two charged $675/hour, and one charged $860/hour. Though these partners are accomplished attorneys, their rates are out-of-step with the Ohio market. Thus, based on the rates adopted *supra*, as well as the partners' qualifications/experience, the Court lowers the rates of Mr. Sprong and Mr. Hoffman to $538/hour; and Mr. Hochman and Mr. Tillery to $580/hour.[9] *See, e.g.*, *Palombaro v. Emery Fed. Credit Union*, No. 1:15-CV-792, 2018 WL 5312687, at *11 (S.D. Ohio Oct. 25, 2018) ($538.50/hour to partner with 32 years of experience); Schumacher, 995 F. Supp. 2d at 847 ($538/hour to senior partner).

---

[8] The Court concludes that Mr. Bissonette's accounting and statistics experience justifies a high associate rate, under the facts of this case.

[9] The Court concludes that Mr. Tillery's and Mr. Hochman's substantial experience—43 and 53 years, respectively—justifies a high partner rate.

9

Trakhter's Counsel charged an associate rate for document review. This rate is reasonable. In this case, the document review involved was complex. Trakhter's Counsel combed through over four million documents for evidence of fraud. (Doc. 45-5 at ¶¶ 5–8). Plus, the result obtained was favorable. Trakhter's Counsel helped reach a $19.5 million global settlement, based on their findings. (Doc. 45-1). On these facts, the Court will not substitute its own judgment for that of Trakhter's Counsel on whether associates—as opposed to contract attorneys or paralegals—should have reviewed documents. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1114–15 (9th Cir. 2008) (refusing to question staffing decisions in setting reasonable rates).[10]

## B. Adequacy of Records

Defendants argue that the records kept by Trakhter's Counsel are inadequate. (Doc. 49 at 10). The Court (largely) disagrees.

The party seeking attorneys' fees has the burden of "documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The party must submit evidence that enables the court to determine that such hours and hourly rates "were actually and reasonably expended" in the litigation. *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing*

---

[10] *See also Moreno*, 534 F.3d at 1115 ("The difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys—must drive the district court's decision."); *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, No. 1:98-CV-479, 2008 WL 906031, at *12–13 (W.D. Mich. Mar. 31, 2008) (noting that, while a Michelangelo should not paint a "farmer's barn" for "Sistine Chapel rates," plaintiffs' counsel are "in the best position to determine how their time and the time of their associates" should be allocated) (citations omitted).

*& Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984). "Where the documentation is inadequate, the court may reduce the award accordingly." *Brown v. Halsted Fin. Servs., LLC*, No. 3:12-CV-308, 2013 WL 693168, at *3 (S.D. Ohio Feb. 26, 2013).

In this case, Trakhter's Counsel submitted detailed billing entries, setting out the hours expended, the rates charged, and the tasks performed. (Docs. 54-1 & 54-2). The Court has reviewed the billing entries carefully, and overall, the Court finds the billing entries adequate to document the attorneys' fees claim. *Slate*, 732 F.2d at 502 ("In obtaining the number of hours expended on the case, the district court must conclude that the party seeking the award has sufficiently documented its claim."). Defendants raise three main arguments in opposition to this conclusion. However, the Court finds each (largely) unpersuasive.

### 1. *Time-Keeping Programs*

First, Defendants argue that the automatic time-keeping programs employed by Trakhter's Counsel caused overbilling. (Doc. 49 at 12). The Court disagrees. Courts refuse to reduce attorneys' fees awards based on speculation. *Cf. Fisher v. Comm'r of Soc. Sec.*, No. 2:14-CV-13881, 2015 WL 4944385, at *2 (E.D. Mich. Aug. 19, 2015) ("Because there was 'no support-other than speculation-that the work by [Plaintiff's] counsel took an unreasonable amount of time[,]' the Court concludes that the 'request for attorney[s'] fees is fair and reasonable.'") (quoting *Grooms v. Comm'r of Soc. Sec.*, No. 2:08-CV-14189, 2011 WL 4536886, at *3 (E.D. Mich. Sept. 30, 2011)).

Here, Defendants offer speculation in support of their argument that overbilling has occurred. (Doc. 49 at 13–14 (noting that numerous entries are for .1 or .11 hours);

Doc. 49-1 at 38 (asking how many "searches were executed" such "that actual minutes [we]re stretched into billable hours?"); *id.* at 41–42 (noting that, while it is "possible that Mr. Forrest spent 2.5 hours" flipping "through 25 emails," it is also possible he did so "in five[-]minutes flat")). The Court will not base a reduction of attorneys' fees off such conjecture, especially where, as here, Trakhter's Counsel have submitted declarations asserting that their billing entries are conservative. (Doc. 55-1 at ¶ 9; Doc. 55-3 at ¶ 7).

### *2. Document Review Entries*

Second, Defendants argue that Trakhter's Counsel spent too much time on document review. (Doc. 49 at 15). The Court disagrees. The relevant inquiry is not whether "in hindsight the time expenditure was strictly necessary to obtain the relief achieved." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598 (2001). The relevant inquiry is "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Id.*

Here, Trakhter's Counsel reviewed over four million documents for evidence of fraud. (Doc. 55-5 at ¶¶ 4–8). It took Trakhter's Counsel a little over 100 days to complete the review. (*Id.*) The evidence submitted indicates that this was a "brisk" review, under the circumstances. (*Id.*) While Defendants argue that Trakhter's Counsel could have completed the review more efficiently by using more targeted search terms, the Court will not substitute its own judgment for that of Trakhter's Counsel. (Doc. 49 at 15). Given the complex nature of this case, the Court finds it reasonable that Trakhter's

Counsel put "eyes on" numerous of the documents. Whether this expense was, in hindsight, strictly necessary is not controlling. Indeed, the Court notes that Trakher's recovery indicates that he benefitted from the careful scrutiny of the documents.

### 3. *Vague/Suspect Entries*

Finally, Defendants argue that Trakhter's Counsel submitted vague/suspect billing entries. (Doc. 49 at 14). The Court (largely) disagrees. Billing entries do not need to be "explicitly detailed." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005). Moreover, billing entries should not be considered in a vacuum. *See, e.g.*, *U.S. ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 149 (6th Cir. 2010) (holding that billing entries for "Email," "Telephone Conference w/REL," and "Travel to Owensboro" were sufficiently detailed to support an attorneys' fees award, where the court could determine, through "context," the nature of the "work performed").

Overall, the billing entries submitted by Trakhter's Counsel describe, in sufficient detail, the work performed. This is especially true when the billing entries are viewed in context. For example, while Defendants take issue with Mr. Hochman's billing entries stating "Work on memo" (Doc. 49-1 at 49), those billing entries—in context—plainly refer to work Mr. Hochman (and Mr. Bissonette) did, assembling/analyzing information about the case, following communications with Trakhter/the United States, (Doc. 54-1 at 17–18; *see also* Doc. 55-2 at ¶ 12). Given this context, it is hard to understand how Mr. Hochman could have described the work performed in any more detail without infringing on the attorney-client privilege.

However, while most of the billing entries submitted by Trakhter's Counsel describe, in sufficient detail, the work performed, there are a few small exceptions:

- Mr. McNamara's entries stating "Other" (4.2 hours), "Other – 1 Reminder" (.11 hours), "Researching about: Tabs" (.44 hours), "Researching" (.54 hours), and "Reading" (.22 hours) are too vague to support an award. (Doc. 49-1 at 29–30, 45–48; Doc. 55-4 at ¶ 10). Thus, the Court will reduce Mr. McNamara's time by 5.51 hours.

- Mr. McNamara's entry stating "Away from Computer" does not, on its face, relate to work performed in connection with the case. (Doc. 55-4 at ¶ 10). Thus, the Court will reduce Mr. McNamara's time by another 1.3 hours.

- Mr. Bissonnette's entry stating "miscellaneous" is too vague to support an award. (Doc. 49-1 at 46). Thus, the Court will reduce Mr. Bissonnette's time by 4.5 hours.

- Mr. Hoffman's entries stating "Reading" (.11) and "Researching" (1.65) are too vague to support an award. (Doc. 49-1 at 46–48). Thus, the Court will reduce Mr. Hoffman's time by 1.76 hours.

- Ms. Tackett's entries, billing more than 15 hours in a single day, are suspect. (Doc. 49-1 at 51). Thus, at the suggestion of Trakhter's Counsel, the Court will cap such entries at 15 hours per day. (Doc. 55 at 17–18). This results in a reduction of 13.6 hours.[11]

---

[11] Defendants raise a host of additional contentions. The Court has considered all of them, but the Court does not find any of them persuasive. As one example, Defendants argue that Trakhter's Counsel should not be able to recover fees attributable to relator infighting. (Doc. 49 at 16). But, Trakhter's Counsel have submitted evidence that no relator infighting occurred. (Doc. 55-1 at ¶ 18 (explaining that, while Trakhter's Counsel consulted with other relators, and while Trakhter's Counsel researched the effects of other relators' claims, Trakhter's Counsel did not fight with other relators—over Trakhter's share or otherwise)). As another example, Defendants argue that Trakhter's Counsel should not be able to recover fees attributable to drafting a retainer agreement. (Doc. 49 at 16). But, courts have awarded plaintiffs such fees under fee shifting statutes. *See Czarniewy v. D.C.*, No. 1:02-CV-1496, 2005 WL 692081, at *4 (D.D.C. Mar. 25, 2005), *amended in part sub nom. T.C. v. D.C.*, No. 1:02-CV-1496, 2007 WL 1053235 (D.D.C. Apr. 9, 2007) (allowing an IDEA plaintiff to recover attorneys' fees incurred in drafting a retainer agreement). And, as yet another example, Defendants argue that Trakhter's counsel should not be able to recover fees attributable to "duplicative" work. (Doc. 49 at 11). But, Defendants have offered no specific examples that duplicative work exists. (*See id.*); *Glover v. Johnson*, 138 F.3d 229, 253 (6th Cir. 1998) (refusing to find plaintiffs' billing entries duplicative when defendants "failed to provide even minimal support for their allegations").

## C. Availability of Enhancement

Defendants argue that a fee enhancement is not available under the facts of this case. (Doc. 49 at 18). The Court agrees.

Fee enhancements are only available in "rare cases of 'exceptional success.'" *Gonter*, 510 F.3d at 621 (quoting *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005)). Whether a fee enhancement is available depends on "whether an adjustment is <u>necessary</u>" to the determination of reasonable attorneys' fees. *Barnes*, 401 F.3d at 745 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)) (emphasis added). "The party seeking [the fee] enhancement bears the burden of proving" necessity. *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 610 F. App'x 464, 471 (6th Cir. 2015) (citing *Blum*, 465 U.S. at 898).

The Sixth Circuit has indicated that courts should consider twelve factors in deciding whether a fee enhancement is available:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Gonter*, 510 F.3d at 621 n.7 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

Under these factors, for example, a fee enhancement is available when "a case is 'pathbreaking and of great social import' . . . , when counsel 'establish[es] a new cause of action,' . . . or when [a] case 'result[s] in a change in the jurisprudence of any of the issues litigated.'" *Bank One, N.A. v. Echo Acceptance Corp.*, 595 F. Supp. 2d 798, 803 (S.D. Ohio 2009), *aff'd*, 380 F. App'x 513 (6th Cir. 2010) (quoting *Geier*, 372 F.3d at 792–96, and *West v. Tyson Foods, Inc.*, No. 4:05-CV-183, 2008 WL 5110954, at *3 (W.D. Ky. Dec. 3, 2008)). Such cases, however, are very much the exception to the general rule. *See, e.g.*, *Gonter*, 510 F.3d at 621–22.

In this case, a fee enhancement is not available. While Trakhter's Counsel expended significant time, effort, and skill litigating this case, and while Trakhter's Counsel achieved a positive result, on difficult facts, due to competent representation, the result achieved by Trakhter's Counsel is not so exceptional as to render a fee enhancement <u>necessary</u>. Trakhter obtained a $19.5 million global settlement, with the help of the United States and plaintiff-relators in Case No. 1:12-CV-935. (Doc. 45-1). While substantial, Trakhter's share of that global settlement ($15,527,844.00) represents only a 1.7–5% recovery on his original claim ($300–900 million). (Doc. 49-1 at 58).

Other courts in this Circuit have agreed that a fee enhancement is not available on similar facts. *See Gonter*, 510 F.3d at 621–22 (upholding a district court's denial of a fee enhancement to an FCA plaintiff, who had recovered a $12.5 million settlement on a $100 million claim); *U.S. ex rel. LeFan v. Gen. Elec. Co.*, No. 4:00-CV-222, 2008 WL 152091, at *1 (W.D. Ky. Jan. 15, 2008), *aff'd in part and remanded*, 397 F. App'x 144 (6th Cir. 2010) (determining that no multiplier was available to an FCA plaintiff who had

16

recovered $11.5 million on its claim). Here, as in those cases, the "reasonable hourly rate," set forth *supra*, adequately compensates the attorneys involved for their hard work.[12] *Blum*, 465 U.S. at 898.

**D. Final Calculations**

Per the analysis *supra,* the Court concludes that it is reasonable for Trakhter's Counsel to recover attorneys' fees, for the hours spent litigating this case, as follows:

**HP's Final Hours, Rates, and Totals**

| Employee | Title | JD | Hours | Rate | Total |
|---|---|---|---|---|---|
| James Hochman | Partner | 1966 | 389.80 | $580 | $226,084.00 |
| Brett Bissonette | Associate CPA Statistician | 2010 | 537.85 | $325 | $174,801.25 |
| Natalie Tackett | Associate | 1988 | 99.42 | $275 | $27,340.50 |
| **Total** | | | **1027.07** | | **$428,225.75** |

**KT's Final Hours, Rates, and Totals**

| Employee | Title | JD | Hours | Rate | Total |
|---|---|---|---|---|---|
| Steve Tillery | Partner | 1976 | 53.91 | $580 | $31,267.80 |
| Doug Sprong | Partner | 1989 | 18.01 | $538 | $9,689.38 |
| John Hoffman | Partner | 1990 | 489.87 | $538 | $263,550.06 |
| Aidan McNamara | Associate | 2002 | 330.36 | $325 | $107,367.00 |
| Michael Forrest | Associate | 2007 | 63.10 | $325 | $20,507.50 |
| Chris Combs | Associate | 2012 | 187.52 | $260 | $48,755.20 |
| Michelle Stallings | Associate | 2005 | 804.50 | $275 | $221,237.50 |
| Cozetta Gagg | Associate | 2000 | 60.50 | $275 | $16,637.50 |
| **Total** | | | **2007.77** | | **$719,011.94** |

---

[12] *See also Gonter*, 510 F.3d at 622 ("[W]e are unaware of any case where a decision not to apply an enhancement was overturned as an abuse of discretion.").

Additionally, the Court concludes that it is reasonable for Trakhter's Counsel to recover attorneys' fees, for the hours spent bringing this motion, as follows:[13]

**HP's Additional Hours, Rates, and Totals**

| Employee | Title | JD | Hours | Rate | Total |
|---|---|---|---|---|---|
| James Hochman | Partner | 1966 | 21.25 | $580 | $12,325.00 |
| **Total** | | | **21.25** | | **$12,325.00** |

**KT's Additional Hours, Rates, and Totals**

| Employee | Title | JD | Hours | Rate | Total |
|---|---|---|---|---|---|
| Steve Tillery | Partner | 1976 | 2.70 | $580 | $1,566.00 |
| John Hoffman | Partner | 1990 | 126.27 | $538 | $67,933.26 |
| Aidan McNamara | Associate | 2002 | 1.32 | $325 | $429.00 |
| Michael Forrest | Associate | 2007 | 5.54 | $325 | $1,800.50 |
| **Total** | | | **135.83** | | **$71,728.76** |

Finally, the Court concludes that it is reasonable for Trakhter's Counsel to recover the costs/expenses, incurring litigating this case and bringing this motion. HP incurred $4,488.90 in costs/expenses in litigating this case, (Doc. 54-1 at 12, 43); KT incurred $20,891.60 in costs/expenses in litigating this case, (Doc. 54-2 at 6, 130); and KT incurred another $15,000.00 in costs/expenses in bringing this motion, (Doc. 55-1 at 9). The Court finds that all of these costs/expenses are compensable. 31 U.S.C. § 3730(d)(1) (stating that a successful *qui tam* plaintiff can recover costs/expenses necessarily incurred).[14] Defendants have not raised any specific objections to this award.

---

[13] Such fees are available. *See Gonter,* 510 F.3d at 620 (stating such fees are available); *see also Husted*, 831 F.3d at 720 (abrogating three percent cap previously applicable to such fees). The Court awards them at the rates established *supra*. (*See* Doc. 55-1 at 9; Doc. 55-2 at ¶ 16).

[14] *See also Graves v. Plaza Med. Centers, Corp.*, No. 1:10-CV-23382, 2018 WL 3699325, at *12 (S.D. Fla. May 23, 2018), *report and recommendation adopted*, No. 1:10-CV-23382, 2018 WL 3697475 (S.D. Fla. July 13, 2018) (awarding expert fees under 31 U.S.C. § 3730(d)(1)).

## IV. CONCLUSION

Based upon the foregoing, Trakhter's Amended Motion for Attorneys' Fees, Costs, and Expenses under 31 U.S.C. § 3730(d) (Doc. 44) is **GRANTED IN PART AND DENIED IN PART**. At Trakhter's request,[15] the Court orders Defendants to pay: HP a total of $440,550.75 in attorneys' fees and $4,488.90 in costs/expenses; and KT a total of $790,740.70 in attorneys' fees and $35,891.60 in costs/expenses. Defendants shall be jointly and severally liable for this award.[16] Post-judgment interest shall accrue on this award from January 18, 2018.[17] (Doc. 45-1).

**IT IS SO ORDERED.**

Date: 6/10/19

*Timothy S. Black*
Timothy S. Black
United States District Judge

---

[15] While the FCA "provides for the payment of attorneys' fees to a prevailing *qui tam* plaintiff," Trakhter has asked the Court to direct the attorneys' fees awarded here to his counsel. (Doc. 44); *Ellison*, 2010 WL 2854137, at *1 (awarding attorneys' fees in FCA case directly to counsel).

[16] *Cf. U.S. ex rel. Greendyke v. CNOS, P.C.*, No. 4:04-CV-4105, 2007 WL 2908414, at *7 (D.S.D. Sept. 27, 2007) ("The Court finds it is equitable to hold all of the defendants in this [FCA] action jointly and severally liable for the Relator's attorney[s'] fees and costs."); *see also U.S. ex rel. Augustine v. Century Health Servs., Inc.*, 136 F. Supp. 2d 876, 895 (M.D. Tenn. 2000), *aff'd*, 289 F.3d 409 (6th Cir. 2002) (holding defendants jointly and severally liable for treble damages under the FCA).

[17] A *qui tam* plaintiff is entitled to attorneys' fees when a "judgment on the merits" renders him/her successful. *Lefan*, 397 F. App'x at 152. Post-judgment interest accrues from that date forward. *Id.* (holding that post-judgment interest accrued on an award of attorneys' fees, under 31 U.S.C. § 3730(d)(1), when the court "consented to a partial settlement agreement"—not when the court later "quantified" what attorneys' fees were reasonable). A stipulation of dismissal with prejudice, under Fed. R. Civ. P. 41(a)(1)(A), constitutes a "judgment on the merits." *Finney v. AFLAC Fed. Credit Union*, No. 4:10-CV-99, 2011 WL 5573905, at *1 (M.D. Ga. Nov. 16, 2011) (citation omitted). Here, a Stipulation of Dismissal (Doc. 37) and a Notice of Compliance (Doc. 56)—an effective "judgment on the merits"—rendered Trakhter successful on January 18, 2018. (Doc. 45-1 at ¶ 15 (noting that a dismissal with prejudice would occur, under the Stipulation of Dismissal, on the filing of the Notice of Compliance)). Post-judgment interest is proper from that date forward, *i.e.*, January 18, 2018.

19